IN RE: ERIC YOUNG, MINOR CHILD BORN AUGUST 6, 1992

No. 174A96

(Filed 6 June 1997)

**1. Parent and Child § 99 (NCI4th)— termination of parental rights—neglect—time of termination proceeding**

A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding.

**Am Jur 2d, Parent and Child §§ 7, 34, 35, 48.**

**Who has custody or control of child within terms of penal statute punishing cruelty or neglect by one having custody or control. 75 ALR3d 933.**

**2. Parent and Child § 100 (NCI4th)— termination of parental rights—neglect—insufficient evidence**

The trial court's termination of respondent mother's parental rights on the basis of neglect at the time of the termination proceeding was unsupported by clear, cogent, and convincing evidence where the evidence showed that the cleanliness of the mother's household was questionable prior to the removal of her child nine months prior to the petition to terminate her parental rights and over a year before the termination proceeding; the child had been in the custody of others for over a year; a family therapist employed by the court to conduct a home study prior to the termination hearing testified that the mother's home was then neat and clean and that the mother's treatment for breast cancer had changed her attitude with respect to her willingness to become a better parent; and the record showed that the mother missed only two of twenty-four scheduled one-hour visits with the child after temporary custody was awarded to another woman.

**Am Jur 2d, Parent and Child §§ 7, 34, 35, 48.**

**Who has custody or control of child within terms of penal statute punishing cruelty or neglect by one having custody or control. 75 ALR3d 933.**

IN RE YOUNG

[346 N.C. 244 (1997)]

**3. Parent and Child § 100 (NCI4th)— probability of repetition of neglect—giving child up for adoption—insufficient evidence**

Evidence that respondent mother had given her first child up for adoption was insufficient to show a probability of repetition of neglect of her second child sufficient to support termination of her parental rights in the second child.

**Am Jur 2d, Parent and Child §§ 7, 34, 35, 48.**

**Who has custody or control of child within terms of penal statute punishing cruelty or neglect by one having custody or control. 75 ALR3d 933.**

**4. Parent and Child § 102 (NCI4th)— termination of parental rights—abandonment—insufficient findings**

The trial court's findings did not support the termination of respondent mother's parental rights on the ground of abandonment where the findings indicate a hostile relationship between the mother and the father's family members who were caring for the child during the six months immediately preceding the filing of the petition; the transcript shows that the mother was diagnosed as having cancer and had surgery, radiation treatment and chemotherapy during this time; the mother's request to see the child before surgery was denied by the father; there was a period of time during which the mother did not know the whereabouts of the child; and the mother began visiting the child when she learned who had custody of the child.

**Am Jur 2d, Parent and Child §§ 12, 14.**

**Abandonment and emergency jurisdiction of court under sec. 3(a)(3) of the Uniform Child Custody Jurisdiction Act (UCCJA) and the Parental Kidnapping Prevention Act (PKPA), 28 USCS § 1738A(c)(2)(c). 5 ALR5th 788.**

Appeal by respondent pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 122 N.C. App. 163, 468 S.E.2d 266 (1996), affirming orders terminating respondent's parental rights entered by Beale, J., on 10 April 1995 *nunc pro tunc* 1 November 1994 and 3 November 1994 in District Court, Moore County. On 10 October 1996, the Supreme Court allowed discretionary review of additional issues. Heard in the Supreme Court 14 April 1997.

**IN RE YOUNG**

[346 N.C. 244 (1997)]

*Lapping & Lapping, by Stephan Lapping, for petitioner-appellee James Daniel Young.*

*Brown & Robbins, L.L.P., by Carol M. White, for respondent-appellant Dawn Hayward.*

*David G. Crockett Law Offices, by Jerry D. Rhoades, Jr., guardian ad litem.*

FRYE, Justice.

This case involves proceedings terminating parental rights based on neglect and abandonment. We conclude that the evidence presented at trial was insufficient to support the grounds for termination of the mother's parental rights. Accordingly, we must reverse the Court of Appeals and remand for further proceedings.

The evidence presented at trial tended to show the following facts and circumstances. Petitioner, James Daniel Young, and respondent, Dawn Christian Hayward, are the parents of Eric James Miguel Young (Eric). Eric was born on 6 August 1992. Respondent had previously given birth to a child that she gave up for adoption. Petitioner and respondent never married but lived together for approximately two months following Eric's birth. After petitioner moved out, Eric stayed with respondent in her apartment in Aberdeen, North Carolina, and later in a house in Pinebluff, North Carolina.

On 17 August 1993, respondent gave physical custody of Eric to Kay Harris, petitioner's sister. On 22 September 1993, petitioner went to Harris' home and took custody of Eric. Jamie Bransford (Bransford), petitioner, and various family members of petitioner cared for Eric until February 1994 when petitioner gave physical custody of Eric to Alvina Street (Street).

In October 1993, respondent was diagnosed with breast cancer requiring surgery, radiation treatment, and chemotherapy.

In May 1994, Street told respondent that Eric was living with her, and respondent began to visit Eric. On 13 May 1994, upon a motion filed by Street, an *ex parte* temporary custody order was filed granting custody of Eric to Street and her husband. An order was filed continuing the temporary custody order and granting visitation to respondent on 2 June 1994.

On 6 May 1994, petitioner filed a petition for termination of respondent's parental rights on the basis that respondent neglected

**IN RE YOUNG**

[346 N.C. 244 (1997)]

and abandoned Eric. After a trial in District Court, Moore County, Judge Michael E. Beale entered an adjudication order on 10 April 1995 *nunc pro tunc* 1 November 1994, finding grounds to terminate respondent's parental rights pursuant to N.C.G.S. § 7A-289.32(2) and (8) for neglect and abandonment. Judge Beale entered a disposition order on 10 April 1995 *nunc pro tunc* 3 November 1994, finding that it was in the best interest of the child to terminate respondent's parental rights. In addition, the trial court concluded that petitioner's parental rights should be terminated and that a termination proceeding would be instituted if petitioner did not voluntarily release his rights by 5:00 p.m. on 4 November 1994. Petitioner filed a stipulation for termination of his parental rights on 4 November 1994.

Respondent appealed to the Court of Appeals. The Court of Appeals, in a divided panel, affirmed the trial court's termination of respondent's parental rights. Respondent appealed to this Court based on Judge Wynn's dissent, and this Court allowed her petition for discretionary review as to additional issues.

Respondent makes three arguments on appeal. After careful review and consideration of the record, transcript, briefs, and oral arguments of counsel, we reverse the decision of the Court of Appeals.

The termination of parental rights statute provides for a two-stage termination proceeding: N.C.G.S. § 7A-289.30 governs the adjudication stage, and N.C.G.S. § 7A-289.31 governs the disposition stage. *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). At the adjudication stage, the party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist. N.C.G.S. § 7A-289.30(d), (e) (1995). The grounds for terminating parental rights are listed in N.C.G.S. § 7A-289.32. Upon determining that one or more of the grounds for terminating parental rights exist, the court moves to the disposition stage to determine whether it is in the best interests of the child to terminate the parental rights. N.C.G.S. § 7A-289.31 (1995).

In her first argument, respondent contends that the finding of neglect or the probability of its repetition at the time of the termination proceeding was not based on clear, cogent, and convincing evidence. We agree.

N.C.G.S. § 7A-289.32 lists neglect as one of the grounds for terminating parental rights, and provides in pertinent part:

The court may terminate the parental rights upon a finding of one or more of the following:

. . . .

>   (2) The parent has abused or neglected the child. The child shall be deemed to be . . . neglected if the court finds the child to be . . . a neglected child within the meaning of G.S. 7A-517(21).

N.C.G.S. § 7A-289.32(2) (1995). N.C.G.S. § 7A-517(21) defines neglect in pertinent part as follows:

> Neglected juvenile.—A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C.G.S. § 7A-517(21) (1995).

[1] A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding. *In re Ballard*, 311 N.C. 708, 716, 319 S.E.2d 227, 232 (1984).

> During a proceeding to terminate parental rights, the trial court must admit and consider evidence, find facts, make conclusions and resolve the ultimate issue of whether neglect authorizing termination of parental rights under N.C.G.S. 7A-289.32(2) and 7A-517(21) is present *at that time*. N.C.G.S. 7A-289.30(d). The petitioner seeking termination bears the burden of showing by clear, cogent and convincing evidence that such neglect exists *at the time of the termination proceeding*. N.C.G.S. 7A-289.30(e).

*In re Ballard*, 311 N.C. at 716, 319 S.E.2d at 232. (citations omitted) (emphasis added). Termination of parental rights for neglect may not be based solely on past conditions which no longer exist. *Id.* at 714, 319 S.E.2d at 231-32.

In the instant case, Jamie Bransford, a friend of respondent's, testified that on one occasion Eric was lying on the floor and a roach was crawling on his face. Bransford also observed respondent giving

**IN RE YOUNG**

[346 N.C. 244 (1997)]

Eric a "milk bottle with contents looking similar to cottage cheese." These incidents occurred when Eric was between two and six months old. Alvina Street, who had custody of Eric at the time of the termination proceeding, testified that she kept Eric for respondent on various occasions when Eric was between two and ten months old. She testified that she had seen cat litter and cat feces scattered on the floor near the litter box and roaches in the lining of Eric's car seat. Sue Stubbs, an acquaintance of respondent's, testified that she visited respondent's home a few weeks before the termination proceedings and found cat urine and cat feces on the kitchen floor.

Kelvin Clark is a family therapist and was employed by the court to conduct a home study prior to the termination proceedings. He testified that respondent's home was neat and clean and that respondent had arranged a bedroom and had purchased carpet on which Eric could play. Clark also testified as follows: "I don't know a cat owner who hasn't had cat feces on their floor; I do think it's a sign of negligence, but again, I don't think—I think if we focus on these sorts of things, all of us could be caught with a problem." More significantly, Clark testified that respondent's breast cancer had changed her attitude with respect to her willingness to become a better parent. He testified as follows:

> I can't predict the future, but I do know that when people face death and trauma they change. I work with a lot of people who are recovering alcoholics, for example, I have worked with [sic]. And sometimes you see a man who has been drinking all his life and then, say, has a bad accident or a doctor says, "You're going to die if you don't stop drinking," and then he stops. And I think there are—pain is life's best teacher, and I think that's happened in Dawn's life.

In addition, the record shows that respondent missed only two of the twenty-four scheduled one-hour visits with her son since Alvina Street received legal custody of him.

[2] We conclude that the evidence in this case is equivocal and, taken as a whole, is not clear, cogent, and convincing evidence of neglect *at the time of the termination proceeding.* We note that the trial court found as fact, *inter alia*, as follows:

> 55. The Court finds overwhelming evidence that *in and around August, 1993* the minor child, Eric Young was neglected in that he [was] not receiving proper care in the custody of the

Respondent mother and was living in an environment injurious to his welfare.

(Emphasis added.) While the evidence shows that the cleanliness of respondent's household was questionable prior to the removal of her child in August 1993, this was nine months prior to the filing of the petition to terminate respondent's parental rights and over a year before the termination proceeding. Additionally, at the time of the termination proceeding, the child had been in the custody of others for over a year.

We also conclude that the probability of repetition of neglect in this case is not shown by clear, cogent, and convincing evidence. Where evidence of prior neglect is presented, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *In re Ballard*, 311 N.C. at 715, 319 S.E.2d at 232. The evidence in the instant case shows that a considerable change in conditions had occurred by the time of the termination proceeding, namely, respondent's diagnosis of breast cancer and subsequent changes in lifestyle as testified to by Kelvin Clark.

[3] We also note that "a prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." *Id.* at 713-14, 319 S.E.2d at 231. However, in the instant case, there was no prior adjudication of neglect with respect to respondent's first child. The only evidence in the record shows that respondent gave up the child for adoption. Thus, the evidence does not support the trial court's finding that "neglect is likely to continue in light of Respondent's prior history regarding her first minor child."

Therefore, we conclude that the evidence of neglect at the time of the termination proceeding does not rise to the statutory requirement of being clear, cogent, and convincing. Accordingly, we reverse the decision of the Court of Appeals on this issue.

[4] In her second argument, respondent contends that the trial court's conclusion of law that she abandoned her child and that abandonment was a ground upon which her parental rights could be terminated was not supported by clear, cogent, and convincing evidence. The Court of Appeals did not address abandonment; however, we granted discretionary review as to this issue.

## IN RE YOUNG

[346 N.C. 244 (1997)]

N.C.G.S. § 7A-289.32 lists abandonment as one of the grounds for terminating parental rights, and provides in pertinent part:

The court may terminate the parental rights upon a finding of one or more of the following:

. . . .

(8) The parent has willfully abandoned the child for at least six consecutive months immediately preceding the filing of the petition.

N.C.G.S. § 7A-289.32(8). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Adoption of Searle*, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986). In the instant case, since the petition for terminating respondent's parental rights was filed on 6 May 1994, respondent's behavior between 6 November 1993 and 6 May 1994 is determinative.

The trial court's findings of fact with respect to respondent's conduct during this time period are as follows:

40. When the minor child was in Glendon, [after 22 September 1993,] Respondent called at times but never went to visit the minor child. [R]espondent testified she had been told to stay away by [petitioner's sister's] husband.

41. Respondent never came to see Eric while he and Petitioner resided with [petitioner's brother and sister-in-law]. Petitioner did call Respondent to tell her that Eric was there. Petitioner told respondent to call to make arrangements to visit Eric. Respondent made no attempt to schedule such visits.

. . . .

46. The respondent testified that she was not informed of the child's whereabouts while the child was living with Ms. Bransford and was not told the child was living with Mrs. Street until late April, 1994.

47. Respondent testified that after she learned the child was staying with Mrs. Street, she asked to take the child and learned that a temporary custody Order had been entered.

**IN RE YOUNG**

[346 N.C. 244 (1997)]

Also during this period of time, respondent was diagnosed with breast cancer, had surgery, and began radiation treatment and chemotherapy.

Assuming *arguendo* that the foregoing findings of fact are supported by clear, cogent, and convincing evidence, we nevertheless conclude that these findings do not support the conclusion that respondent willfully abandoned her minor child. It is not clear from the findings of fact that respondent's conduct "manifest[ed] a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Adoption of Searle*, 82 N.C. App. at 275, 346 S.E.2d at 514. The findings of fact indicate the probable hostile relationship between respondent and petitioner's family members who cared for Eric during this period of time. The findings of fact also indicate that there may have been a period of time during which respondent did not know the whereabouts of her child. However, upon learning that Eric was in the custody of Mrs. Street, she began visiting him. The trial court made no findings of fact with respect to respondent's diagnosis of breast cancer during this time, but the transcript shows that the court heard testimony about respondent's cancer during the termination proceeding. For example, the transcript contains petitioner's testimony that respondent had asked to see Eric before her surgery and that petitioner had denied her request. This conduct does not evidence a willful abandonment of her child on the part of respondent.

We conclude that the trial court's findings of fact do not support its conclusion that respondent abandoned her minor child. Accordingly, we reverse the trial court as to this issue.

In her third argument, respondent contends that the trial court erroneously ordered that her parental rights be terminated at the dispositional stage of the termination proceeding. Respondent contends, in the event that her first arguments are resolved against her, that the trial court nevertheless erred in concluding that the child's best interests dictated that her parental rights be terminated. Having resolved the issues of neglect and abandonment in respondent's favor, it is unnecessary for us to address this issue.

We find the instant case similar to *In re Alleghany County Dep't of Social Servs. v. Reber*, 75 N.C. App. 467, 331 S.E.2d 256 (1985), *aff'd per curiam*, 315 N.C. 382, 337 S.E.2d 851 (1986), in which the trial court terminated a mother's parental rights on grounds of abuse. After reviewing the evidence, the Court of Appeals held that the evi-

dence of abuse or the probability of its repetition did not meet the statutory standard of being clear, cogent, and convincing. *Id.* at 471, 331 S.E.2d at 258. Therefore, since the grounds for terminating the mother's parental rights did not exist at the time of the termination proceeding, the order terminating the mother's parental rights in the best interests of the child had to be reversed. *See id.* at 470-72, 331 S.E.2d at 258-59.

In the instant case, having reviewed all of the evidence, we conclude that the evidence is not sufficient to support the grounds for termination found by the trial court. As the Court of Appeals stated in *In re Alleghany County*:

> While we would not hesitate to uphold the "harsh judicial remedy," [*In re*] *Adcock*, 69 N.C. App. [222,] 227, 316 S.E.2d [347,] 350 [(1984)], of terminating parental rights in the best interest of the child if the basis for termination [was] supported by clear, cogent, and convincing evidence, as the statute requires, we conclude that this evidence does not provide such support.

*Reber*, 75 N.C. App. at 471-72, 331 S.E.2d at 259.

Accordingly, we reverse the decision of the Court of Appeals and remand to that court for further remand to the trial court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.