IN THE MATTER OF: KAYLA ANN McLEMORE AND TAYLOR LYNN McLEMORE

No. COA99-619

(Filed 1 August 2000)

**Termination of Parental Rights— abandoment—alcoholism and imprisonment—no efforts to contact or support child**

A termination of parental rights action was remanded where the trial court concluded that petitioner had demonstrated neither of the statutory grounds warranting termination and did not reach the best interests of the child under the two step process provided by Chapt. 7A at the time, but the court's conclusion that respondent did not willfully abandon his child was erroneous in

———————————

IN RE McLEMORE

[139 N.C. App. 426 (2000)]

that the court's findings indicated that respondent provided no financial or emotional support and made no contact with his child during the relevant six months. Although the record is replete with evidence that respondent suffered from alcoholism, was incarcerated for some time, and had trouble maintaining steady employment, the court's findings do not provide an explanation inconsistent with willfulness within the meaning of *Bost v. Van Nortwick*, 117 N.C. App. 1. As in *In re Harris*, 87 N.C. App. 179, one ineffectual attempt at contact during the relevant six-month period would not preclude otherwise clear willful abandonment.

Appeal by petitioner from order entered 23 November 1998 by Judge H. William Constangy in Mecklenburg County District Court. Heard in the Court of Appeals 13 March 2000.

*Law Office of Elizabeth T. Hodges, by Elizabeth T. Hodges and K. Mitchell Kelling, for petitioner-appellant.*

*Charles W. Porter, III, for respondent-appellee.*

LEWIS, Judge.

Petitioner Jeni Carder and respondent Samuel Lee Benton were married in June 1991 and separated on 21 September 1992. Twins were born of this marriage, Kayla Ann McLemore and Taylor Lynn McLemore, on 6 May 1993. The parties were divorced in 1994, and petitioner was thereafter granted permanent custody of the minor children. At the time of this action, respondent had not seen the children since June 1993. In March 1994, respondent was ordered to pay child support in the amount of $131.80 per week for Taylor Lynn McLemore; petitioner has received no payments. At the time of this action, the last time respondent had provided financial assistance for his children was in June 1993, when he gave petitioner $200. Before that, respondent had contributed approximately $150 for the support of his children.

On 20 August 1997, petitioner filed a petition to terminate the parental rights of respondent with regard to Taylor Lynn McLemore. Only that petition is presently before us on appeal; thus, we only address respondent's parental rights in regard to Taylor and not Kayla. Among petitioner's allegations relevant to this appeal are that respondent failed without justification to pay any child support and that respondent willfully abandoned the child for at least six months preceding the filing of the petition to terminate parental rights.

At the time the petition in this case was filed, Chapter 7A of the North Carolina General Statutes governed termination of parental rights, providing for a two-stage termination proceeding. First, at the adjudication stage, the petitioner must demonstrate by clear, cogent and convincing evidence that one or more of the grounds warranting termination, as set forth in G.S. 7A-289.32, exist. N.C. Gen. Stat. § 7A-289.30(e). Upon a finding that grounds for terminating parental rights are present, the court moves to the disposition stage, determining whether the termination of parental rights is in the best interest of the child. N.C. Gen. Stat. § 7A-289.31(a). The standard for review in termination of parental rights cases is whether the court's findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law. *In re Ballard*, 63 N.C. App. 580, 585, 306 S.E.2d 150, 153 (1983), *modified on other grounds*, 311 N.C. 708, 319 S.E.2d 227 (1984).

G.S. 7A-289.32 provides in relevant part:

The court may terminate the parental rights upon a finding of one or more of the following:

. . .

(5) One parent has been awarded custody of the child by judicial decree, or has custody by agreement of the parents, and the other parent whose parental rights are sought to be terminated has for a period of one year or more next preceding the filing of the petition willfully failed without justification to pay for the care, support and education of the child, as required by said decree or custody agreement.

. . .

(8) The parent has *willfully* abandoned the child for at least six consecutive months immediately preceding the filing of the petition. . . .

(Emphasis added.) The court in this case concluded that petitioner demonstrated neither of these statutory grounds warranting termination, and thus, did not reach the question of the best interests of the child and denied the petitioner's motion. Based upon our examination of the order, we reverse the trial court's order with regard to Taylor.

Because we hold the trial court's findings support the court's conclusion that respondent willfully abandoned his child, we need only

address that statutory ground. The trial court here concluded respondent's absence from his child's life was not willful under G.S. 7A-289.32(8) "because of the substance abuse and alcohol issues of the father within the meaning of *Bost v. Van Nortwick* and the incarceration of the father within the meaning of *In re Harris* and *In re Maynor*" (citations omitted).

"Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. 244, 251, 485 S.E.2d 612, 617 (1997). "It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and [willfully] neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962). The word "willful" encompasses more than a mere intention, but also purpose and deliberation. *In re Adoption of Searle*, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986).

In our opinion, the trial court here interpreted *Bost, Harris* and *Maynor* as allowing the fact of a respondent's alcohol abuse and incarceration, standing alone, to negate a finding of willfulness under the statute. We do not agree. In *Bost*, we held the trial court erred in concluding the respondent willfully abandoned his children for a period of at least six consecutive months preceding the filing of the petition pursuant to G.S. 7A-289.32(8). *Bost v. Van Nortwick*, 117 N.C. App. 1, 18, 449 S.E.2d 911, 920-21 (1994).

As to the statutory factor of willful abandonment, *Bost* requires the court to consider, during the relevant six month period, the financial support respondent has provided to the child, as well as the respondent's emotional contributions to the child. In addressing respondent's financial contributions, the *Bost* court noted, " '[A] mere failure of the parent of a minor child in the custody of a third person to contribute to its support does not in and of itself constitute abandonment. Explanations could be made which would be inconsistent with a [willful] intent to abandon.' " *Id.* at 18, 449 S.E.2d at 921 (quoting *Pratt v. Bishop*, 257 N.C. 486, 501-02, 126 S.E.2d 597, 608 (1962)). In addressing the second consideration of emotional support, the court must consider a respondent's display of "love, care and affection" for his children. *Id.*

When considering the respondent's financial support as part of its abandonment analysis, the *Bost* court indicated that respondent's

severe alcoholism and financial inattentiveness due to his lack of gainful employment negated a finding of willful abandonment. It was relevant that the respondent in *Bost* lost his driver's license due to his alcohol related offenses in 1985 and was imprisoned in 1988 for driving while his license was revoked. *Id.* at 19, 449 S.E.2d at 920. However, necessary to the court's analysis was the fact that respondent made significant financial contributions to his children; during the six months under consideration, he paid $8500 in back child support. *Id.* at 17, 449 S.E.2d at 920. When considering the respondent's emotional contributions as part of the abandonment analysis, the *Bost* court found that respondent visited the children at least four times in the preceding six months and had expressed to the petitioner his desire to pay his back child support and set up regular visitation. *Id.* at 19, 449 S.E.2d at 921. All of this evidence, when viewed in light of respondent's severe alcoholism, allowed the court to conclude the respondent had not willfully abandoned his children.

We do not agree that the circumstances surrounding respondent's alcohol problems in this case negate a finding of willful abandonment. Although the record here is also replete with evidence that respondent suffered from alcoholism, was incarcerated for some time, and had trouble maintaining steady employment, the court's findings here indicate that respondent provided no financial or emotional support during the relevant six months, as did the respondent in *Bost*. The findings indicate that during these six months, respondent made no contacts with his child, financial or otherwise. Indeed, he had made neither financial nor emotional contributions to the child since 1993—four years before the filing of this petition. At best, the court's findings indicate that during the relevant six months, respondent made but one feeble *attempt* at providing financial support. While in prison, he listed the child's name as his dependent on a work release application such that child support payments could be deducted from his pay. However, he listed the wrong last name for his child and "Mecklenburg County" as the child's address. Further, when no deductions were made by the Department of Corrections, respondent failed to make any inquiry.

Even considering the time period outside the relevant six month period, the court's findings reflect that by 1997, when the petition in this case was filed, respondent had made but two inquiries regarding the whereabouts of his child in 1993 and 1994. Although that finding is uncontested on appeal, we note that in 1993 and 1994, the child's residence had not changed since birth, where respondent had previ-

ously visited them. Nonetheless, without any indication of efforts by respondent to fulfill his parental duties, financially or emotionally, notwithstanding his problems with alcohol, the court's findings in this case simply do not provide an explanation inconsistent with willfulness within the meaning of *Bost*. Thus, the trial court improperly concluded respondent did not willfully abandon his child.

In addition, the trial court in this case cited *In re Harris*, 87 N.C. App. 179, 360 S.E.2d 485 (1987), and *In re Maynor*, 38 N.C. App. 724, 248 S.E.2d 875 (1978), to establish that respondent's incarceration negated a finding of willfulness on the issue of abandonment. We disagree. In *Maynor*, we addressed whether a respondent's *commission of a crime* against nature against his daughter was consistent with a willful intent to abandon, and not whether the fact of respondent's *incarceration* was consistent with a willful intent to abandon. *Id.* at 727, 248 S.E.2d at 877. In *Harris*, although we noted that a respondent's incarceration, standing alone, neither precludes nor requires a finding of willfulness, we held one attempted contact during the relevant statutory period compelled a finding of willful abandonment, despite respondent's incarceration during the relevant time period under consideration. *In re Harris*, 87 N.C. App. at 184, 360 S.E.2d at 488. We also conclude that one ineffectual attempt at contact during the relevant six month period in this case would not preclude otherwise clear willful abandonment, despite the fact of respondent's incarceration during that time.

The trial court's conclusion that respondent did not willfully abandon his child is error. Accordingly, we reverse the trial court's conclusion that respondent did not willfully abandon his child and remand for consideration as to the best interests of the child commensurate with this opinion.

Reversed.

Judges JOHN and EDMUNDS concur.